Middaugh v. Trimmer.

ANTOINETTE MIDDAUGH

*v.*

AUGUSTUS TRIMMER, administrator &c., of Frederick Middaugh, deceased.

A covenant contained in a deed of jointure provided that the husband should invest his wife's separate estate, and account to her for the income and for the rents of her real estate. After the marriage he received all of her personal property and invested it, but never accounted for nor paid to her the income thereof, nor the rents of her real estate, which he also received. —*Held,* that his representative was, after his decease, liable to account to her therefor, with interest to be calculated with yearly rests.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. Nicholas Harris, Mr. C. H. Valentine* and *Mr. H. S. Harris,* for complainant.

*Mr. W. H. Morrow,* for defendant.

THE CHANCELLOR.

This suit is brought by the widow of Frederick Middaugh, deceased, to obtain a decree establishing her claim against his estate for money, $1,300, received by him from her, for her use, on the day of their marriage, and for which he never accounted, and also for the rent received by him for her real property during their marriage, and applied by him to his own use, for which also he never accounted to her. They were married at Phillips-

burg on the 6th of October, 1864. He was then a widower, and she had never been married. She had $1,300, of which $400 were in gold and $900 in legal-tender notes. Immediately before their marriage, for the purpose of jointure, he conveyed to her a house and lot in Belvidere, and gave her his bond for $1,000, to be paid, if she should survive him, within six months after his decease, with interest from the day of his death, and they entered into an agreement of jointure by which she agreed to accept that provision, and the use for life from the time of his death, if she should survive him, of one-third of his real estate (which use he thereby secured to her), in lieu of her dower in his real property, and he covenanted with her that if the marriage should be solemnized, " he would carefully, according to the best of his skill and judgment, husband, manage and preserve her estate which she then had, and which, during the marriage, she might receive by descent, purchase or otherwise, from her relatives or others, and which might come to his hands; and that he would take and receive no part thereof to his own use, and would, after the expiration of the marriage, leave the same secure to her if any such estate should come to and remain in his hands until then." And she, on her part, covenanted that she would claim no share of his personal estate, under the statute of distributions or otherwise, but that the above-mentioned provision securing to her her own estate, should bar her therefrom, unless given to her by his will, or some act of his done after the execution of the agreement. It is proved that she had the $1,300, and that he received that money on the day of the marriage, to hold it for her under the agreement. Besides her own testimony on the subject, numerous witnesses testify not only to his admission, but also to his voluntary declarations that he had received it at the time of the marriage, and that he had invested it. In the presence of Silas P. Hinds and Alpheus R. Hinds, he said he had invested the money, and promised to get it and give it to her. To Marshall Crutts he said he had invested the money in a house and lot in Belvidere. To Peter Bepler, who asked him if he had secured the money to her, he said he had given her good papers for it on the day of the mar-

riage; that he was her guardian. To John S. House he said he had agreed to pay it back to her out of his estate, and that she had enough evidence in writing for her protection in what (referring to the agreement) he had given her on the day of the marriage. To Severin Reider he said he had received the money from her, and would keep it for her, and put it out at interest. To James R. Harris he said he had the money. To the commissioners of appeal in case of taxation, he declared that he owed her a debt of from $1,000 to $2,000, and sought a reduction of taxation on that amount, which he appears to have sometimes obtained. By the covenant he bound himself to husband, manage and preserve her estate which should come to his hands, and covenanted, also, that he would neither take nor receive any part of it to his own use, but would leave it secure to her at the dissolution of the marriage, if it should remain in his hands until that event. He received of her estate not only the $1,300, but also all the rent of her house and lot, mentioned in the agreement, from the time of the marriage up to his death. He did not, in any way, secure those moneys, or any part of them, to her, but mingled them with or used them as his own, and he does not appear to have ever paid her any interest. By his will he gives her $150 worth (at the appraised value) of his household furniture, directs that the bond of $1,000 be paid in lieu of her dower, and gives her for life one-third of the net rents, issues and profits of all his real estate, except his farm and a certain house and lot in Belvidere, but makes no further or other provision for her, nor any for the payment of the money he owed her. There will be an account of the $1,300, and the rents, with interest, which is to be calculated with yearly rests, and the defendant will be decreed to pay the amount in the due course of administration. The complainant is entitled to her costs out of the estate.